**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| ESSEX SOLUTIONS INC. and ESSEX SOLUTIONS USA LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLASCENT ELECTRONIC (GANZHOU) CO., LTD. and WELLASCENT TECHNOLOGIES USA LLC,<br><br>Defendants. | Civil Action No. ___<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiffs Essex Solutions Inc. ("Essex Solutions") and Essex Solutions USA LLC ("Essex USA" and, collectively "Essex"), through their undersigned attorneys, for their Complaint against Defendants Wellascent Electronic (Ganzhou) Co., Ltd. ("Wellascent Ganzhou") and Wellascent Technologies USA LLC ("Wellascent Technologies" and, collectively, "Wellascent") allege as follows:

## THE PARTIES

1. Essex Solutions is a Delaware corporation with its principal place of business at 5770 Powers Ferry Road NW, Suite 400, Atlanta, GA 30327.

2. Essex USA is a limited liability company organized and existing under the laws of Michigan with its principal place of business at 5770 Powers Ferry Road NW, Suite 400, Atlanta, GA 30327.

3. On information and belief, Wellascent Ganzhou is a Chinese company with its principal place of business at No. 788 Jinpenshan Road, Zhanggong, Ganzhou, Jiangxi, China.

4. On information and belief, Wellascent Technologies is a Texas limited liability company with its principal place of business at 1050 South State Highway 161, Grand Prairie, Texas 75051.

**JURISDICTION**

5. This is an action for patent infringement arising under the Acts of Congress relating to patents, 35 U.S.C. §§ 271, *et seq*.

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over Wellascent Ganzhou because it purposefully imports flat wire products into the United States, makes those products available for sale through an established distribution channel, and the instant patent infringement cause of action is alleged to arise out of these activities. *See Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222 (Fed. Cir. 2010) (finding personal jurisdiction where "[the Defendant] ha[d] purposefully imported the accused products into California, made those products available for sale through an established distribution chain, and the cause of action for patent infringement is alleged to arise out of these activities"). For example, according to public records, as recently as July 21, 2026, Wellascent Ganzhou imported about 11.9 metric tons of PEEK wire to Wellascent Technologies at its Texas address (listed below), with the imported wire marked for ultimate delivery to ZF Transmissions Gray Court LLC, a United States automotive supplier. (*See* Ex. E).

8. This Court has personal jurisdiction over Wellascent Technologies because it resides in this District—it is a Texas limited liability company, and it has a principal place of business within this district, at 1050 South State Highway 161, Grand Prairie, Texas 75051. (Ex. F.) Further, according to public importation records, and as discussed in the previous paragraph,

Wellascent Technologies has coordinated with Wellascent Ganzhou with respect to importing accused products into the U.S. from that location. (*See* Ex. E).

9. Venue is proper in this District as to Wellascent Ganzhou because it is a foreign entity whose operation is wholly outside the operation of the federal venue laws. *See* 28 U.S.C. § 1391(c)(3); *In re HTC Corp.*, 869 F.3d 1349, 1354-61 (Fed. Cir. 2018) (applying the "alien-venue rule" and reaffirming the "'long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special.'") (citation omitted).

10. Venue is proper in this District as to Wellascent Technologies under 28 U.S.C. §1400(b) because it resides in this District. As discussed above, Wellascent Technologies is incorporated in Texas and has its principal place of business in this District. (Ex. F.)

## BACKGROUND

### Essex's Extrusion-Coated Magnet Wire Products

11. Essex is a leader in the research, development, and manufacture of wire and cable products used in automotive, industrial, residential, aerospace and energy applications. Tracing its roots to the 1930 founding of Essex Wire Corporation, which began with the acquisition of Ford Motor Company's wire assembly operations, Essex has deep ties in the automotive and aviation industries, among others, and has operated a major facility in Fort Wayne, Indiana for ninety years.

12. One of Essex's key product lines is an extrusion-coated magnet wire, which is a specialized type of insulated wire conductor designed for use in high-frequency and high-temperature operations. Extrusion-coated magnet wire consists of an insulated electrical conductor, typically copper or aluminum, coated with an enamel or varnish that can be used to create magnetic fields that help drive motors. This structure is designed to distribute electric

fields, resist cracking during winding, and suppress partial discharge inception voltage. The multilayer construction of extrusion-coated magnet wire is engineered to withstand repeated mechanical stress during winding while maintaining insulation performance. Further, extrusion-coated magnet wire is often manufactured in a flat, rectangular shape to fit in tight spaces within an engine.

13. Important use cases for extrusion-coated magnet wire products include automotive vehicle motors, especially electric-drive motors, and motors in aviation products. As electrification systems push toward higher voltages and temperatures, extrusion-coated magnet wire has become a foundational component in the motors of these types of products. Because motors are constrained by space and cooling capacity, extrusion-coated magnet wire prioritizes flexibility and mechanical durability. For example, rectangular conductors and tightly adhered insulation allow dense coil packing while maintaining reliability during bending and long-term thermal cycling.

14. One of Essex's extrusion-coated magnet wire product lines is HVWW® (High Voltage Winding Wire). HVWW® consists of heat-resistant enameled copper over which an extruded resin insulation layer is applied, forming a multilayer insulation system engineered for adhesion, durability, and long-term performance. For the extruded layer, the HVWW® products can use polyether ether ketone, or "PEEK," a semicrystalline thermoplastic resin. The HVWW® products' enamel layer protects the copper conductor from oxidation and oxygen penetration, maintains insulation integrity under severe operating conditions, and reduces the risk of insulation degradation and catastrophic failure. The construction is engineered to withstand repeated mechanical stress during formation of the products and during winding within a motor, while

maintaining insulation performance. An example embodiment of the HVWW® product is shown below:




**Essex's HVWW® Product (Ex. G)**

15. HVWW® is formulated to provide high resistance to partial discharge inception voltage in order to reduce the possibility of corona effects, and HVWW® can operate at temperatures of approximately 240° C and voltages exceeding 1,000 V without insulation degradation. (*See* Ex. G.) The product uses a flexible rectangular conductor geometry that fills gaps in motor windings, improving torque and power density, and can be manufactured in customized dimensions and coating thicknesses to meet particular motor architectures and tolerances. HVWW® is engineered to enable smaller and more efficient motors to withstand the high heat and electrical stress associated with high-voltage systems.

**<u>The Asserted Patents</u>**

16. In connection with its innovative design and development work on HVWW® products, Essex has invested significant resources in protecting the intellectual property that

underlies its products. That intellectual property includes a portfolio of HVWW® patents in the United States and worldwide. The patents at issue in this litigation are a valuable part of the Essex patent portfolio. They are United States Patent Nos. 8,847,075 ("the '075 Patent"); 9,224,523 ("the '523 Patent"); 10,210,966 ("the '966 Patent"); and 10,566,109 ("the '109 Patent" and, collectively with the other patents, "the Patents in Suit"). (Exs. A-D.) The inventions claimed in these HVWW® patents were the result of years of research and development on magnet wire products by Essex.

17. The United States Patent and Trademark Office ("USPTO") duly and legally issued the '075 Patent, titled "Insulated Wire," to Furukawa Electric Co., Ltd., Furukawa Magnet Wire Co., Ltd., and Denso Corporation on February 19, 2019. The '075 Patent is based on United States App. No. 13/556,936, filed July 24, 2012, and claims priority to Japanese App. No. 2011-176496, filed on August 12, 2011. The '075 Patent has 5 claims, including 1 independent claim and 4 dependent claims. The '075 Patent expires on April 11, 2033.

18. Through a series of assignments, Essex owns all rights, title, and interest in the '075 Patent, including the right to sue for past and ongoing infringement. A true and correct copy of the '075 Patent is attached hereto as Exhibit A.

19. The USPTO duly and legally issued the '523 Patent, titled "Inverter Surge-Resistant Insulated Wire," to Furukawa Electric Co., Ltd. and Furukawa Magnet Wire Co., Ltd. on December 29, 2015. The '523 Patent is based on United States App. No. 14/500,414, filed September 29, 2014, and claims priority to Japanese App. No. 2013-020887, filed on February 5, 2013, and to international App. No. PCT/JP2013/079211, filed on October 29, 2013. The '523 Patent has 4 claims, including 1 independent claim and 3 dependent claims. The '523 Patent expires on October 29, 2033.

20. Through a series of assignments, Essex owns all rights, title, and interest in the ’523 Patent, including the right to sue for past and ongoing infringement. A true and correct copy of the ’523 Patent is attached hereto as Exhibit B.

21. The USPTO duly and legally issued the ’966 Patent, titled “Insulated Wire and Coil,” to Furukawa Electric Co., Ltd. and Furukawa Magnet Wire Co., Ltd. on February 19, 2019. The ’966 Patent is based on United States App. No. 15/632,044, filed June 23, 2017, and claims priority to Japanese App. No. 2014-265390, filed on December 26, 2014, and to international App. No. PCT/JP2015/075972, filed on September 14, 2015. The ’966 Patent has 5 claims, including 1 independent claim and 4 dependent claims. The ’966 Patent expires on September 14, 2035.

22. Through a series of assignments, Essex owns all rights, title, and interest in the ’966 Patent, including the right to sue for past and ongoing infringement. A true and correct copy of the ’966 Patent is attached hereto as Exhibit C.

23. The USPTO duly and legally issued the ’109 Patent, titled “Insulated Wire, Coil and Electrical or Electronic Equipment,” to Furukawa Electric Co., Ltd. and Furukawa Magnet Wire Co., Ltd. on February 18, 2020. The ’109 Patent is based on United States App. No. 16/132,872, filed Sept. 17, 2018, and claims priority to Japanese App. No. 2016-076903, filed on April 6, 2016, and to international App. No. PCT/JP2017/007713, filed on February 28, 2017. The ’109 Patent has 8 claims, including 1 independent claim and 7 dependent claims. The ’109 Patent expires on February 28, 2037.

24. Through a series of assignments, Essex owns all rights, title, and interest in the ’109 Patent, including the right to sue for past and ongoing infringement. A true and correct copy of the ’109 Patent is attached hereto as Exhibit D.

**<u>The Infringing Wellascent Products</u>**

25. Wellascent is a Chinese manufacturer of discount wire and cable products. Rather than put in the time and resources necessary to develop its own innovations, Wellascent instead has chosen to take advantage of the research and development work performed by Essex. Wellascent has begun offering for sale and selling wire products having a conductor coated with an extruded thermoplastic resin, such as PEEK, that use the technology embodied in Essex's patents. (*See* Exs. H-I.) Essex (and its related companies) have taken active steps to protect its intellectual property from this improper infringement activity by Wellascent. For example, a related Essex company filed a patent infringement litigation action in China asserting infringement of Chinese Patent Nos. CN104170024 and CN107112083, which are the Chinese equivalents of the asserted '523 and '966 Patents, respectively.

26. Essex has now learned that Wellascent is importing its infringing magnet wire products into the United States and offering for sale and selling those products for use in this country. (*See* Ex. E.)

27. Wellascent markets, sells, and imports magnet wire products that practice one or more claims of each of the Asserted Patents. (*See* Exs. H-I.) Wellascent's infringing magnet wire products include a conductor, such as copper, and an outer thermoplastic resin layer, such as a PEEK layer. (*See id.*) The below diagram from Wellascent's website provides a cross section of an exemplary accused magnet wire product:




**Wellascent's Infringing PEEK Wire Product (Ex. H)**

28. Wellascent markets and sells its accused magnet wire products under at least the product code *EKW at a range of thicknesses, and it offers both flat and round wire designs. (*See* Ex. I.)

29. The accused magnet wire products are manufactured outside of the United States and later imported into the United States by Wellascent. For example, public importation records show that Wellascent has imported accused wire products having an extrusion-coated PEEK layer into the United States. (*See* Ex. E.) Such importations include a shipment of approximately 11.9 metric tons of accused PEEK wire from Wellascent Ganzhou that entered the United States at Long Beach, California on July 21, 2026, for which Wellascent Technologies was the importer of record. (*See id.* at row 7.)

30. Further, on information and belief, Wellascent has imported its accused magnet wire products for marketing and exhibition at United States trade shows. For example, in March 2025, Wellascent exhibited its PEEK wire products at the APEC 2025 trade show held at the Georgia World Congress Center in Atlanta, Georgia from March 17-19, 2025. (Exs. J-K.) The

APEC 2025 official exhibitor directory lists "Wellascent Electronic (Ganzhou) Co., Ltd." as an exhibitor at Booth 350. (Ex. K.) Wellascent's trade show flyer, published on LinkedIn to advertise its participation at APEC 2025, identifies the PEEK wire products as one of the products Wellascent would be exhibiting at APEC 2025. (Ex. J.) On information and belief, the PEEK wire products that Wellascent exhibited at APEC 2025 were manufactured abroad and imported into the United States.

31. In addition, in October 2025, a representative of Essex attended the Detroit Battery Show in Detroit, Michigan. There, Essex's representative attended an exhibit for ZF Transmission Gray Court, LLC, at which he observed a Wellascent PEEK wire product displayed as a component in a ZF Transmission product. On information and belief, this PEEK wire product was manufactured abroad and imported into the United States. Notably, ZF Transmission Gray Court, LLC is the same company for which the July 2026 shipment of Wellascent's PEEK wire product (discussed above) was marked for delivery. (*See* Ex. E.)

**COUNT I – PATENT INFRINGEMENT OF THE '075 PATENT**

32. Essex incorporates Paragraphs 1-31 by reference as if set forth fully as part of this count.

33. Wellascent has directly infringed and continues to directly infringe, literally and/or under the Doctrine of Equivalents, at least independent Claim 1 of the '075 Patent by making, using, offering for sale, selling or importing the accused wire products, including without limitation the PEEK wire products. Claim 1 of the '075 Patent reads as follows:

> 1. An insulated wire comprising:
> a conductor,
> a baked enamel layer containing at least a polyamide-imide provided on the outer periphery of the conductor directly or through an insulated layer, and
> at least one extrusion-coated resin layer provided on the outer side of the baked enamel layer,

> wherein the baked enamel layer has at least one functional group selected from the group consisting of a carboxyl group, an ester group, an ether group and a hydroxyl group on the outer surface thereof, and adheres to the extrusion-coated resin layer.

(Exhibit A at Cols. 13:22-31, 14:13-14.) A claim chart illustrating Essex's infringement allegations against Claim 1 of the '075 Patent is attached as Exhibit L.

34. Wellascent is and has been on notice of the alleged infringement of the '075 Patent at least as of the time Essex filed and provided notice of this Complaint. Further, on information and belief, Wellascent was on notice of the Patents in Suit prior to the filing of this Complaint, at least because Wellascent is involved in patent litigation in China on patents covering the same subject matter. Continuing to make, offer for sale, use, sell or import the accused wire products, including without limitation the PEEK wire products, following notice of this lawsuit and its infringement of the '075 Patent constitutes willful infringement.

35. Wellascent has also induced, and continues to induce, infringement of at least independent Claim 1 of the '075 Patent at least by offering for sale and selling the accused wire products, including without limitation the PEEK wire products, directly to customers or through distributors to customers. (Exs. H-I, L.) Wellascent has taken affirmative, active steps to promote infringement of the '075 Patent, including by instructing and encouraging its customers or customers of its distributors to use the accused wire products in a manner that embodies the invention claimed in the '075 Patent. (*See* Exs. H-I.)

36. On information and belief, Wellascent knows that its sale of the accused wire products and instructions for use of the same will induce customers to directly infringe the '075 Patent. On information and belief, Wellascent's marketing materials and instructions for use of the accused wire products in a manner claimed by the '075 Patent demonstrate that Wellascent intends to induce customers to infringe the '075 Patent. (*See* Exs. H-I.)

37. Essex has been damaged by Wellascent's infringement of the '075 Patent. Essex will continue to be damaged in the future unless Wellascent is permanently enjoined from infringing, directly or indirectly, the '075 Patent.

**COUNT II – PATENT INFRINGEMENT OF THE '523 PATENT**

38. Essex incorporates Paragraphs 1-37 by reference as if set forth fully as part of this count.

39. Wellascent has directly infringed and continues to directly infringe, literally and/or under the Doctrine of Equivalents, at least independent Claim 1 of the '523 Patent by making, using, offering for sale, selling or importing the accused wire products, including without limitation the PEEK wire products. Claim 1 of the '523 Patent reads as follows:

> 1. An inverter surge-resistant insulated wire, having at least one baked enamel layer around the outer periphery of a conductor, and an extrusion-coated resin layer at the outside of the baked enamel layer,
>
> wherein the extrusion-coated resin layer is a single layer, and a resin of the resin layer is a resin selected from polyether ether ketone, a thermoplastic polyimide, a polyamide having an aromatic ring, a polyester having an aromatic ring, and polyketone,
> wherein a total thickness of the baked enamel layer and the extrusion-coated resin layer is 50 μm or more, a thickness of the baked enamel layer is 50 μm or less, and a thickness of the extrusion-coated resin layer is 200 μm or less,
> wherein the minimum of tensile elastic modulus of the extrusion-coated resin layer at a range of 25 to 250° C. is 100 MPa or more and 400 MPa or less,
> wherein a dielectric constant of an insulation layer having a combination of the baked enamel layer and the extrusion-coated resin layer is 3.0 or more and 3.5 or less at 25° C. and 4.0 or more and 5.0 or less at 250° C., and
> wherein a relation between dielectric constant ($\in 1'$) of the baked enamel layer at 250° C. and dielectric constant ($\in 2'$) of the extrusion-coated resin layer at 250° C. satisfies $2.0 \geqq (\in 2'/\in 1') > 1$.

(Exhibit B at Col. 24:23-47.) A claim chart illustrating Essex's infringement allegations against Claim 1 of the '523 Patent is attached as Exhibit M.

40. Wellascent is and has been on notice of the alleged infringement of the '523 Patent at least as of the time Essex filed and provided notice of this Complaint. Further, on information

and belief, Wellascent was on notice of the Patents in Suit prior to the filing of this Complaint at least because the ’523 Patent is the United States counterpart of Chinese Patent No. CN104170024, which is asserted against Wellascent in ongoing patent litigation in China that began on August 15, 2025. Continuing to make, offer for sale, use, sell or import the accused wire products, including without limitation the PEEK wire products, following notice of this lawsuit and its infringement of the ’523 Patent constitutes willful infringement.

41. Wellascent has also induced, and continues to induce, infringement of at least independent Claim 1 of the ’523 Patent at least by offering for sale and selling the accused wire products, including without limitation the PEEK wire products, directly to customers or through distributors to customers. (Exs. H-I, M.) Wellascent has taken affirmative, active steps to promote infringement of the ’523 Patent, including by instructing and encouraging its customers or customers of its distributors to use the accused wire products in a manner that embodies the invention(s) claimed in the ’523 Patent. (*See* Exs. H-I.)

42. On information and belief, Wellascent knows that its sale of the accused wire products and instructions for use of the same will induce customers to directly infringe the ’523 Patent. On information and belief, Wellascent’s marketing materials and instructions for use of the accused wire products in a manner claimed by the ’523 Patent demonstrate that Wellascent intends to induce customers to infringe the ’523 Patent. (*See* Exs. H-I.)

43. Essex has been damaged by Wellascent’s infringement of the ’523 Patent. Essex will continue to be damaged in the future unless Wellascent is permanently enjoined from infringing, directly or indirectly, the ’523 Patent.

**COUNT III – PATENT INFRINGEMENT OF THE '966 PATENT**

44. Essex incorporates Paragraphs 1-43 by reference as if set forth fully as part of this count.

45. Wellascent has directly infringed and continues to directly infringe, literally and/or under the Doctrine of Equivalents, at least independent Claim 1 of the '966 Patent by making, using, offering for sale, selling or importing the accused wire products, including without limitation the PEEK wire products. Claim 1 of the '966 Patent reads as follows:

> 1. An insulated wire, comprising:
> a rectangular conductor; and
> a thermoplastic resin layer on the rectangular conductor,
> wherein an adhesion strength between the thermoplastic resin layer and the rectangular conductor for a pair of sides of the rectangular conductor opposed to and an adhesion strength between the thermoplastic resin layer and the rectangular conductor for the other pair of sides of the rectangular conductor opposed to are different from each other,
> wherein a difference of the adhesion strength between the thermoplastic resin layer and the rectangular conductor for a pair of sides of the rectangular conductor opposed to and the adhesion strength between the thermoplastic resin layer and the rectangular conductor for the other pair of sides of the rectangular conductor opposed to is 5 gf/mm to 100 gf/mm.

(Exhibit C at Col. 14:22-38.) A claim chart illustrating Essex's infringement allegations against Claim 1 of the '966 Patent is attached as Exhibit N.

46. Wellascent is and has been on notice of the alleged infringement of the '966 Patent at least as of the time Essex filed and provided notice of this Complaint. Further, on information and belief, Wellascent was on notice of the Patents in Suit prior to the filing of this Complaint at least because the '966 Patent is the United States counterpart of Chinese Patent No. CN107112083, which is asserted against Wellascent in ongoing patent litigation in China that began on August 15, 2025. Continuing to make, offer for sale, use, sell or import the accused PEEK wire products,

including without limitation the PEEK wire products, following notice of this lawsuit and its infringement of the ’966 Patent constitutes willful infringement.

47. Wellascent has also induced, and continues to induce, infringement of at least independent Claim 1 of the ’966 Patent at least by offering for sale and selling the accused wire products, including without limitation the PEEK wire products, directly to customers or through distributors to customers. (Exs. H-I, N.) Wellascent has taken affirmative, active steps to promote infringement of the ’966 Patent, including by instructing and encouraging its customers or customers of its distributors to use the accused wire products in a manner that embodies the invention(s) claimed in the ’966 Patent. (*See* Exs. H-I.)

48. On information and belief, Wellascent knows that its sale of the accused wire products and instructions for use of the same will induce customers to directly infringe the ’966 Patent. On information and belief, Wellascent’s marketing materials and instructions for use of the accused wire products in a manner claimed by the ’966 Patent demonstrate Wellascent intends to induce customers to infringe the ’966 Patent. (*See* Exs. H-I.)

49. Essex has been damaged by Wellascent’s infringement of the ’966 Patent. Essex will continue to be damaged in the future unless Wellascent is permanently enjoined from infringing, directly or indirectly, the ’966 Patent.

**COUNT IV – PATENT INFRINGEMENT OF THE ’109 PATENT**

50. Essex incorporates Paragraphs 1-49 by reference as if set forth fully as part of this count.

51. Wellascent has directly infringed and continues to directly infringe, literally and/or under the Doctrine of Equivalents, at least independent Claim 1 of the ’109 Patent by making,

using, offering for sale, selling or importing the accused wire products, including without limitation the PEEK wire products. Claim 1 of the ’109 Patent reads as follows:

> 1. An insulated wire, comprising:
> a conductor having a rectangular cross-section; and
> an insulating coated film having at least two insulating layers laminated together on the conductor, thereby forming a laminated insulating coated film,
> wherein the at least two insulating layers comprise:
> an enamel insulating layer formed from a thermosetting resin on an outer periphery of the conductor, and
> an extruded insulating layer formed from a thermoplastic resin on an outer side of the enamel insulating layer,
> wherein a thickness of the enamel insulating layer is 50 μm or more, and
> wherein a total thickness (T) and a relative permittivity (ε) at 100° C. of the laminated insulating coated film; and a maximum thickness (Tmax), and a maximum value (εmax) and a minimum value (εmin) of a relative permittivity at 100° C. of one layer among the at least two insulating layers; satisfy all of the following relations:
>
> $T \geq 100\ \mu m$ (1.1)
>
> $T\max \leq 100\ \mu m$ (1.2)
>
> $1.5 \leq \varepsilon \leq 3.5$ (2.1)
>
> $1.0 \leq \varepsilon\max/\varepsilon\min \leq 1.2$ (2.2)

(Exhibit D at Col. 22:53-23:10.) A claim chart illustrating Essex’s infringement allegations against Claim 1 of the ’109 Patent is attached as Exhibit O.

52. Wellascent is and has been on notice of the alleged infringement of the ’109 Patent at least as of the time Essex filed and provided notice of this Complaint. Further, on information and belief, Wellascent was on notice of the Patents in Suit prior to the filing of this Complaint at least because Wellascent is involved in patent litigation in China on patents covering the same subject matter. Continuing to make, offer for sale, use, sell or import the accused wire products, including without limitation the PEEK wire products, following notice of this lawsuit and its infringement of the ’109 Patent constitutes willful infringement.

53. Wellascent has also induced, and continues to induce, infringement of at least independent Claim 1 of the ’109 Patent at least by offering for sale and selling the accused wire products, including without limitation the PEEK wire products, directly to customers or through distributors to customers. (Exs. H-I, O.) Wellascent has taken affirmative, active steps to promote infringement of the ’109 Patent, including by instructing and encouraging its customers or customers of its distributors to use the accused wire products in a manner that embodies the invention(s) claimed in the ’109 Patent. (*See* Exs. H-I.)

54. On information and belief, Wellascent knows that its sale of the accused wire products and instructions for use of the same will induce customers to directly infringe the ’109 Patent. On information and belief, Wellascent’s marketing materials and instructions for use of the accused wire products in a manner claimed by the ’109 Patent demonstrate that Wellascent intends to induce customers to infringe the ’109 Patent. (*See* Exs. H-I.)

55. Essex has been damaged by Wellascent’s infringement of the ’109 Patent. Essex will continue to be damaged in the future unless Wellascent is permanently enjoined from infringing, directly or indirectly, the ’109 Patent.

**REQUEST FOR RELIEF**

Essex requests the following relief:

a. A judgment that Wellascent has infringed United States Patent Nos. 8,847,075; 9,224,523; 10,210,966; and 10,566,109, and that such infringement has been willful;

b. An injunction enjoining and restraining Wellascent, its officers, directors, agents, servants, employees, attorneys, and all others acting under or through it from directly or indirectly infringing United States Patent Nos. 8,847,075; 9,224,523; 10,210,966; and 10,566,109;

c. A judgment and order requiring Wellascent to pay all damages arising out of Wellascent's infringement of United States Patent Nos. 8,847,075; 9,224,523; 10,210,966; and 10,566,109, including treble damages for willful infringement as provided by 35 U.S.C. § 284, with interest;

d. A judgment and order directing Wellascent to pay the costs and expenses of this action and attorneys' fees as provided by 35 U.S.C. § 285 and under other applicable law, with interest; and

e. Such other and further relief as this Court may deem just and equitable.

**DEMAND FOR JURY TRIAL**

Essex hereby demands that all issues be determined by jury.

Dated: September 25, 2026

Respectfully submitted,

By: */s/ Andy Tindel*
Andy Tindel
Texas Bar No. 20054500
MT² LAW GROUP
MANN | TINDEL | THOMPSON
112 East Line Street, Suite 304
Tyler, Texas 75702
Tel: (903) 596-0900
Fax: (903) 657-6003
Email: atindel@andytindel.com

Jeffrey D. Blake
MERCHANT & GOULD P.C.
191 Peachtree Street N.E., Suite 3800
Atlanta, GA 30303
Email: jblake@merchantgould.com
Main Telephone: (404) 954-5100

Joshua A. Hartman
MERCHANT & GOULD P.C.
1900 Duke Street, Suite 600
Alexandria, VA 22314
Email: jhartman@merchantgould.com
Main Telephone: (703) 684-2500

Paige S. Stradley
Marra M. Clay
MERCHANT & GOULD P.C.
150 South Fifth Street, Suite 2200
Minneapolis, MN 55402
Email: pstradley@merchantgould.com
mclay@merchantgould.com
Main Telephone: (612) 332-5300

Kristen M. Souther
MERCHANT & GOULD P.C.
1125 17th Street, Suite 2100
Denver, CO 80202
ksouther@merchantgould.com
Main Telephone: (303) 357-1670

Counsel for Plaintiffs
Essex Solutions Inc. and Essex Solutions USA LLC